284 So.2d 686 (1973)
THE FLORIDA BAR.
In re Paul Shimek, Jr.
No. 43920.
Supreme Court of Florida.
October 24, 1973.
Kent Spriggs, Tallahassee, for petitioner.
Barry W. Beroset, Asst. State's Atty., for respondent.
PER CURIAM.
In this Bar disciplinary proceeding, petitioner, Paul Shimek, Jr., seeks review of an order entered by the Circuit Court of Escambia County on April 9, 1973, wherein that court found petitioner to be guilty of violation of both Canon EC8-6 and Canon DR8-102(B), 32 F.S.A. and ordered that he shall within five (5) days from the date of the order file with the Clerk of the Court a public apology, directed to the judiciary of the State of Florida, failing which, he shall, upon the expiration of said time, automatically stand suspended from the practice of law for a period of twenty (20) days. Review of this order is sought pursuant to Rule 11.09, Florida Bar Integration Rule, 32 F.S.A.
This disciplinary proceeding against petitioner arose from statements made by him in a memorandum filed with the United States District Court for the Northern District of Florida, Pensacola Division. Shimek had received an adverse ruling by way of summary judgment in a case before the Circuit Court of Escambia County, Florida. After rehearing was denied, Shimek filed suit in Federal Court alleging violation of his client's civil rights. In opposition to a Motion to Dismiss his cause in the federal court, Shimek filed a "Supplementary Memorandum in Opposition to Motion to Dismiss" wherein he included the following paragraph:
"Succinctly put, the state trial judge avoided the performance of his sworn duty. To repeat a time worn phrase  you cannot get justice in a state court where the judge is a product of the prosecutorial system which aided dramatically in elevating him to the bench. A product of that system who works close with Sheriffs and who must depend on political support and re-election to the bench is not going to do justice. We are forced into this court because of the federal court's general attitude that state courts are available and should first be sampled. We shouldn't be rejected here because we tried to follow the federal court's general guidelines. Justice delayed is justice denied. How much longer must Plaintiff wait?"
The Federal District Court concluding that the above language represented a scarrilous attack upon members of the state judiciary, completely unwarranted by the record before it, and outside all bounds of propriety, by order dated January 25, 1973, *687 expunged the above paragraph from the memorandum and ordered the clerk of that court to refer a copy of the entire memorandum containing the aforestated paragraph to Chief Judge Woodrow Melvin, First Judicial Circuit of Florida, so that he may be apprised of the same.
Upon receipt of this order from the Clerk of the United States District Court, the Chief Judge of the First Judicial Circuit in an order entered January 29, 1973, wherein the Judge indicated,
"It would appear that the supplementary motion referred to in the order entered by Judge Winston E. Arnow was signed by one Paul Shimek, Jr., a member of the Florida Bar engaged in the practice of law at 517 North Baylen Street, Pensacola, Florida.
"Upon consideration of the foregoing there has been made known unto the undersigned as Chief Judge of the First Judicial Circuit of Florida that Paul Shimek, Jr., has been guilty of a violation of the Professional Code of Ethics as promulgated by the Supreme Court of the State of Florida."
directed the State Attorney to institute appropriate disciplinary proceedings in the name of the State of Florida. Pursuant to Rule 11.14, Florida Bar Integration Rule, and the aforestated order of the Circuit Judge, the State Attorney filed a motion to discipline Shimek in the Circuit Court of Escambia County alleging the above facts and charging:
"4. That Paul Shimek, Jr., a member of the Florida Bar, by virtue of the above referenced statement in his "Supplementary Memorandum in Opposition to Motion to Dismiss" filed in the U.S. District Court for the Northern District of Florida on January 23, 1973, did violate Canon 8 of the Code of Professional Responsibility which is entitled "A Lawyer Should Assist in Improving The Legal System", and in particular, Ethical Consideration 8-6:
`... Adjudicatory officials, not being wholly free to defend themselves, are entitled to receive the support of the bar against unjust criticism. While a lawyer as a citizen has the right to critize [sic] such officials publicly, he should be certain of the merit of his complaint, use appropriate language, and avoid petty criticisms, for unrestrained and intemperate statements tend to lessen public confidence in our legal system. Criticisms motivated by reasons other than a desire to improve the legal system are not justified.'
"5. That Paul Shimek, Jr., did violate Disciplinary Rule 8-102(B) by knowingly making a false accusation against Circuit Judge William Frye, to-wit: by stating in his `Supplementary Memorandum in Opposition to Motion to Dismiss' that `... the state trial judge avoided the performance of his sworn duty.'"
Shimek pursuant to 28 U.S.C. § 1442(a)(3) filed a petition for removal of this bar disciplinary proceeding to the Federal District Court which petition was denied by that court. In remanding the matter to the Circuit Court of Escambia County, the Federal Court opined, inter alia,
"That lawyers admitted to practice before a court are considered officers of that court does not mean that the lawyer is an officer within the meaning of the statute here involved and under the circumstances here presented.
"Thus, in Cammer v. United States, 350 U.S. 399 [76 S.Ct. 456, 100 L.Ed. 474], in which the court reversed Cammer v. United States [96 U.S.App.D.C. 30], 223 F.2d 322, one of the cases cited by petitioner, the court held that an attorney, though an officer of the court in many respects, was not an officer as that term *688 was used in the particular statute there involved.
"Congress, in enacting the statute here involved, intended the act to apply in those cases where federal officers, and indeed the federal government itself, require a federal forum. Willingham v. Morgan, 395 U.S. 402 [89 S.Ct. 1813, 23 L.Ed.2d 396], and see also discussion of the act in Tennessee v. Davis, 100 U.S. 257 [25 L.Ed. 648].
"Clearly the Congress did not intend that a lawyer admitted to practice before this Court might use this statute as a vehicle to remove to this Court disciplinary proceedings pending against him in a state court." State of Florida v. Shimek, 73-23-Civ.P., March 9, 1973.
After hearing was held before the assigned judge at which Shimek, his counsel and an Assistant State Attorney appeared, the judge entered an order in which he found, as follows:
"The facts are without dispute. The composite Exhibit No. 1 are those documents attached to the motion filed herein by the State Attorney. It was stipulated that the motion, together with the attachments, constitute the State's case. The accused attorney offered no retraction of any portion of the language in question, his defenses, in essence, being his lack of motive, no personal animosity toward the trial judge, a later apology to the judge, and the right to comment and criticism directed to the election of State judges.
"It is significant that the District Judge adjudged the expunged portion of the memorandum, scurrilous and without foundation in the record. In the disciplinary proceeding, the accused attorney relied upon his `after the fact' statements and contact with the circuit judge. He offered no evidence to prove that the statements made by him had any breath of truth in them. Before the Court is a memorandum which the Court must assume was drafted by the accused attorney, after weighing his thoughts and words and filed in an effort to convince the Federal Judge he was mistreated in the State Court.
"This Court now is confronted with determining whether the memorandum, standing alone, without explanation, subjects its author to discipline. The attorney's later explanation can properly be considered only in mitigation.
"Nothing is more sacred to man and, particularly, to a member of the judiciary, than his integrity. Once the integrity of a judge is in doubt, the efficacy of his decisions are [sic] likely to be questioned. The attorney charged `... the state trial judge avoided the performance of his sworn duty.' That is to say, the trial judge failed to meet the obligation of the oath taken by him. DR8-102(B), Code of Ethics, prohibits a lawyer from `knowingly' making `false accusations against a judge ...' While the attorney says he had no ulterior motive, he, as a member of the Bar, is charged with the knowledge of the import of such accusation. Parenthetically, if there be error in the circuit judge's decision, the purpose of review by the District Court of Appeal is to correct it.
"The other charge, founded upon EC8-6, Code of Ethics, reads:
"... Adjudicatory officials, not being wholly free to defend themselves, are entitled to receive the support of the bar against unjust criticism. While a lawyer as a citizen has a right to criticize such officials publicly, he should be certain of the merit of his complaint, use appropriate language, and avoid petty criticisms, for unrestrained and intemperate statements tend to lessen public confidence in our legal system. Criticisms motivated by reasons other than a desire to improve the legal system are not justified."

*689 "The guidelines for criticism require the attorney to know that his complaint is well-founded and the judge deserving of the criticism. Judges are subject to fair criticism. The attorney is bound to use restraint. His statements must be prudent, not rash, irresponsible, and without foundation. The motivation must be a desire to improve the Courts, not to destroy public confidence. The accused attorney's reckless use of words condemns and frowns upon a state judge, and there are many, who at some time in his career has been a prosecutor. The trial judge, Honorable William Frye, III, was a State Attorney prior to his elevation to the Bench. The accusation ties prosecution to an alliance between Sheriffs and Judges so as to receive political support necessary for re-election, for the reason it is claimed that the judge is beholden to the Sheriff. The thrust of the statement, when read without explanation, leads to the conclusion that the decision of a state judge with a prosecutorial background is tainted. Such ill-conceived idea, however false, tends to lessen public confidence in our legal system.
"The statement is scurrilous, untrue, irresponsible and completely without foundation in this record. The far-reaching significance of the theme is to slur and insult. It is calculated to cast a cloud of suspicion upon the entire judiciary of the State of Florida and is totally unbecoming a member of the Bar.
"It is, therefore, ORDERED AND ADJUDGED as follows:
1. That the motion to dismiss the pending charges is denied.
2. That the objection to introduction in evidence certain articles appearing in the local paper as irrelevant is sustained. For purpose of the record, the evidence is considered as proffered and so marked as Proffered Exhibits 2 through 9, inclusive.
3. That the accused attorney, Paul Shimek, Jr., is guilty of violation of both Canon EC8-6 and Canon DR8-102(B).
4. That the said Paul Shimek, Jr., shall within five (5) days from date hereof, file with the clerk of this Court a public apology, directed to the Judiciary of the State of Florida, failing which, he shall, upon the expiration of said time, automatically stand suspended from the practice of law for a period of twenty (20) days."
Subsequently, and within the allotted time, petitioner made a public apology directed to the Judiciary of the State of Florida for having made the statement which is the subject matter of this proceeding.
The arguments posited by petitioner in the instant petition for review of the order of the trial judge are without merit. He argues, inter alia, that the First Amendment to the Constitution of the United States bars disciplining an attorney for accusations against the judiciary of the State of Florida. To the contrary, this Court in an opinion by the late Justice Thornal in State ex rel. Florida Bar v. Calhoon, 102 So.2d 604, succinctly stated and we reaffirm:
"On the contrary it appears to us that if the Bench and Bar of the area were being assaulted from all angles, with or without justification, it would be the duty of the lawyer above all others to exercise every measure of care and caution to avoid creating any justification for the suspicions. We have on numerous occasions stated that by the very nature of his profession as well as the license under which he does business, more is expected of a lawyer than of a layman who is not invested with the high degree of responsibility and the many fiduciary relations imposed upon a member of the Bar.
* * * * * *
"We have many times announced the proposition that a lawyer is an officer of *690 the courts and as such is an essential component of the administration of justice. State ex rel. Florida Bar v. Murrell, Fla. 1954, 74 So.2d 221; State ex rel. Florida Bar v. Evans, Fla. 1957, 94 So.2d 730. This is the universal rule. 5 Am. Jur., Attorneys at Law, Sec. 6, p. 265.
"Canons of professional ethics are promulgated to establish rules and standards of conduct for the guidance of lawyers and judges in their relationship with each other as well as in their dealings with the public.
"The conclusion which we here reach takes cognizance of the proposition that a judge as a public official is neither sacrosanct nor immune to public criticism of his conduct in office. However, the administration of the judicial process as an institution of government is a sacred proceeding. Webster suggested that `Justice is the greatest interest of man.' Washington himself while laboring as an architect of our governmental structure laid out the specification that `The administration of justice is the firmest pillar of government.' This concept could be supported by corroborating evidence that has accumulated over the years.
"Admitting, therefore, the human weaknesses of judges as individuals but affirming our belief in the essentiality of the chastity of the goddess of justice we are impelled to the inescapable notion that any conduct of a lawyer which brings into scorn and disrepute the administration of justice demands condemnation and the application of appropriate penalties.
"It would be contrary to every democratic theorem to hold that a judge or a court is beyond bona fide comments and criticisms which do not exceed the bounds of decency and truth or which are not aimed at the destruction of public confidence in the judicial system as such. However, when the likely impairment of the administration of justice is the direct product of false and scandalous accusations then the rule is otherwise. 5 Am.Jur., Attorneys at Law, Sec. 266, p. 420."
The conduct of the attorney as defined in this proceeding cannot be condoned. However, we note that pursuant to the order of the trial court he filed a written apology to the court within the time prescribed. Accordingly, the disposition of the matter made by the trial court is approved by this court and the petitioner is admonished to refrain from such misconduct in the future.
It is so ordered.
CARLTON, C.J., and ROBERTS, ADKINS, BOYD and McCAIN, JJ., concur.